UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILL MCLAIN   PLAINTIFF

VERSUS   CIVIL ACTION NO. 3:16CV843-TSL-RHW

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY   DEFENDANTS

## ORDER GRANTING MOTION TO DISQUALIFY COUNSEL

Attorney Toby J. Gammill, representing Plaintiff Will McLain, filed a complaint against Defendant Allstate Property and Casualty Insurance Company (Allstate) alleging that Allstate negligently investigated and handled a theft claim submitted pursuant to a homeowner's policy issued by Allstate. Doc. [1]. Plaintiff further alleges that Allstate breached the terms of the policy and breached its duty of good faith and fair dealing. *Id.* Plaintiff seeks both compensatory and punitive damages against Allstate. *Id.* At issue is whether Gammill should be disqualified from representing McLain based on Gammill's representation of Allstate in other litigation.

McLain signed a contract to retain Gammill's law firm on October 11, 2016. Doc. [14-2]. On October 12, 2016, Gammill sent a letter terminating the firm's attorney-client relationship with Allstate. Doc. [5-1] & [14-1] at 33. Gammill then filed the instant suit on McLain's behalf on October 27, 2016. Doc. [1]. Contemporaneous with its answer, Allstate filed a motion to disqualify Gammill. Doc. [5]. The Court denied the motion without prejudice, allowing the parties to conduct discovery on the disqualification issue. Doc. [10]. Allstate then filed a second motion to disqualify which is now before the Court. Doc. [14].

The Court must first consider whether Gammill's representation of McLain should be characterized as a successive representation or a concurrent representation. The distinction

matters, because the applicable ethical rules and analytical frameworks are different for each. *See In re Dresser Indus. Inc.*, 972 F.2d 540, 544-45 (5th Cir. 1992). If Allstate is deemed a former client of Gammill, then the "substantial relationship" test applies. *See In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992). If Allstate is a deemed current client, then the "exceptional circumstances" test applies. *See In re Dresser*, 972 F.2d at 545. In some situations, the status of present versus former representation should be determined at the time the complaint is filed. *See Ransburg Corp. v. Champion Spark Plug Co.*, 648 F.Supp. 1040, 1044 (N.D.Ill. 1986). However, the colloquially termed "hot potato" doctrine serves as an exception to the general rule that the status of a client is determined by the date of the filed complaint. *Santacroce v. Neff*, 134 F.Supp.2d 366, 370 (D.N.J. 2001). Although the Fifth Circuit has not explicitly adopted the "hot potato" doctrine, the case law discussing this concept as an adjunct to an attorney's duty of loyalty is instructive. *See Picker v. Int'l, Inc. v. Varian Associates, Inc.*, 670 F.Supp. 1363, 1365-66 (N.D.Ohio 1987); *Markham Concepts, Inc. v. Hasbro, Inc.*, 196 F.Supp.3d 345, 348-49 (D.R.I. 2016).

In *Anderson v. Nassau County Dep't of Corrections*, 376 F.Supp.2d 294 (E.D.N.Y. 2005), the district court considered a motion to disqualify counsel and confronted the question of whether to apply the test for successive rather than concurrent representation. The court concluded that "the status of the relationship is assessed at the time that the conflict arises, not at the time that the motion to disqualify is presented." *Id.* at 298. "Otherwise, the subject attorney or law firm could easily transform the relationship from 'continuing' to 'former' by abandoning one of her clients, thereby securing application of the more lenient 'substantial relationship' test." *Id.* As stated in another case, an attorney cannot avoid disqualification simply by firing the disfavored client, "dropping the client like a hot potato, and transforming a continuing

2

relationship to a former relationship by way of client abandonment." *Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449, 453 (S.D.N.Y. 2000). "[T]he offense inherent in taking on the conflicting representation is compounded by seeking to 'fire' the client in pursuit of the attorney's interest in taking on a new, more attractive representation." *Id.*

Gammill received a signed, faxed "Contract for Professional Representation" from McLain on October 11, 2016. Doc. [14-2] & Doc. [14-1] at 33-34. Gammill testified that on October 11th, McLain had called his law firm. At that time, Gammill told McLain that he was ending his relationship with Allstate and that before Gammill could investigate McLain's claim or talk further with him, Gammill would have to end his relationship with Allstate. Doc. [14-1] at 33. Gammill further testified that he began drafting the letter of termination on October 11th and sent it to Allstate on October 12th. *Id.* It is undisputed that Gammill has represented Allstate in first- and third-party claims, including coverage disputes and bad faith claims, since approximately 2005. *Id.* at 8-9, 11, 13-14. According to Gammill, at the time he terminated his relationship with Allstate, he had not received any new work from Allstate in over a year. *Id.* at 22. His firm was wrapping up all of its work with Allstate and planned to terminate its relationship with Allstate based on the fact that it was not getting any new cases. *Id.* Gammill testified that the firm had a "handful" of open files when it terminated its relationship with Allstate but that the "majority were right at the end of the span of their life". *Id.* at 37, 40. He estimated that fewer than 20 files were transferred following the termination. *Id.* at 41-42. Gammill then filed the instant lawsuit on behalf of McLain on October 27, 2016, approximately two weeks after terminating the firm's relationship with Allstate.

The Court finds that Gammill and his law firm had an attorney-client relationship with Allstate when McClain signed a contract for representation on October 11, 2016. If the Court

simply considered the date that Gammill filed a complaint on behalf of McLain, then Allstate would be considered a former client and the rules regarding successive representation would apply. However, the Court takes a more expansive view of "representation" to include events prior to the filing of the complaint and concludes that Gammill represented, albeit briefly, both Allstate and McLain simultaneously. Moreover, the Court finds that Gammill should have declined to represent McLain in the first place, given the duty of loyalty owed to Allstate as a current client.

The disqualification of counsel requires the court to balance the right of a party to retain counsel of its choice against the need to maintain the highest standards of the legal profession and to insure the integrity of the legal proceedings. *See Manning v. Waring, Cox, James, Sklar, & Allen*, 849 F.2d 222, 224-25 (6th Cir. 1988); *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). Whether to disqualify counsel is a substantive matter governed by standards developed under federal law. *In re Dresser*, 972 F.2d at 543. "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). Under Local Rule 83.5 of the Rules of the United States District Courts for the Northern and Southern Districts of Mississippi, this Court has adopted the Mississippi Rules of Professional Conduct. *Owens v. First Family Financial Services, Inc.*, 379 F.Supp.2d 840, 845 (S.D. Miss. 2005).

Rule 1.7 of the Mississippi Rules of Professional Conduct provides in pertinent part:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
>
> > (1) the representation will not adversely affect the relationship with the other client; and

4

> (2) each client has given knowing and informed consent after consultation....

*See Hybrid Kinetic Automotive Holdings, Inc. v. Hybrid Kinetic Automotive Corp.*, 643 F.Supp.2d 819, 824 (N.D.Miss. 2009). As explained in the commentary to Rule 1.7, "[l]oyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined." Where two represented clients' objectives are adverse to one another, "the attorney will almost certainly be faced with a conflict of interest problem." *Illinois Central R.R. Co. v. Gandy*, 750 So.2d 527, 536 (Miss. 1999).

Local rules are not the end of the inquiry. *Owens*, 379 F.Supp.2d at 845. While local rules are the most immediate source of guidance for deciding a motion to disqualify, national ethical rules are also relevant to this Court's determination. *In re American Airlines, Inc.*, 972 at 610. The Court should consider the standards of the profession, the public interest, and the litigants' rights to choice of counsel. *Id.* The following additional factors are part of the disqualification analysis: "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *In re Dresser*., 972 F.2d. at 543-544; *Owens*, 379 F.Supp.2d at 846.

When addressing concurrent representation, the Fifth Circuit has explained that "[n]either the ABA Model Rules of Professional Conduct nor the Code of Professional Responsibility allows an attorney to bring a suit against a client without its consent." *In re Dresser*, 972 F.2d at 544. Thus a lawyer is forbidden from bringing a suit against a current client without the consent

of both clients unless the concurrent representation is "excused or justified under exceptional circumstances". *Id.* at 545. Such exceptional circumstances for allowing dual representation could include some social interest to be served by the dual representation that would outweigh the public perception of impropriety. *Id.* "[I]f the sole reason for suing his own client is the lawyer's self-interest, disqualification should be granted." *Id.* The act of suing one's own client is deemed a "dramatic form of disloyalty" such that disqualification is deemed appropriate. *British Airways, PLC v. Port Authority*, 862 F.Supp. 889, 899 (E.D.N.Y. 1994).

In the instant case, there is no indication that exceptional circumstances exist to allow concurrent representation. Gammill voluntarily entered into an attorney-client relationship with McLain despite knowing that he represented Allstate in several pending matters. By operation of Rule 1.7, Gammill should have declined to represent McLain. By operation of the "hot potato" doctrine, Gammill's immediate termination of his relationship with Allstate did not cure the impropriety. *See Universal City Studios, Inc.*, 98 F.Supp.2d at 453. The instant case does not present a situation where the conflict or dual representation was "thrust upon" Gammill. *See e.g. Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1498-99 (11th Cir. 1989); *Florida Ins. Guar. Ass'n, Inc. v. Care Canada, Inc.*, 749 F.2d 255, 261 (S.D.Fla. 1990); *Sabrix, Inc. v. Carolina Cas. Ins. Co.*, No. CV-02-1470-HU, 2003 WL 23538035, at *3-4 (D.Ore. July 23, 2003). In other words, there was no "mere happenstance of an unseen concurrent adverse representation" that would permit Gammill to avoid the conflict by simply withdrawing representation of one of the adverse clients immediately upon learning of the conflict. *See Flying J Inc. v. TA Operating Corp,* No. 1:06-cv-30TC, 2008 WL 648545, at *4-5 (D.Utah Mar. 10, 2008); *Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*, Nos. 6:06cv549, 6:06cv550, 2007 WL 4376104, at *6 (E.D.Tex. 2007). Gammill undertook

commendable efforts to insulate himself from a conflict of interest by declining to discuss or investigate McLain's claims until after Gammill promptly and formally terminated the firm's relationship with Allstate. Gammill's conduct is understandable given the fact that his employment by Allstate appeared to be coming to a close. Nevertheless, in withdrawing representation of Allstate to pursue a new, more attractive representation, Gammill violated the duty of loyalty he owed to Allstate. *Santacroce*, 134 F.Supp.2d at 370; *Universal City Studios, Inc.*, 98 F.Supp.2d at 453. *See also In re American Airlines, Inc.* 972 F.2d 605, 617-19 (5th Cir. 1992). Based on the foregoing, the Court finds that Defendant's motion to disqualify Gammill should be granted.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant Allstate's [14] Motion to Disqualify Counsel is GRANTED.

SO ORDERED AND ADJUDGED, this the 25th day of April, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE